1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

KEVIN SCHULTZ,                          NO.  C14-1349RSL

9
                           Plaintiff,

10
     v.                                 ORDER REVERSING AND
                                        REMANDING FOR FURTHER
11                                      ADMINISTRATIVE PROCEEDINGS
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,
12
                           Defendant.
13

14

15          Plaintiff  Kevin Schultz appeals the final decision of the Commissioner of the Social

16   Security Administration ("Commissioner") which denied his application for Supplemental

17   Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f,

18   after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

19   the Commissioner's decision is REVERSED and REMANDED.

20                     I.        FACTS AND PROCEDURAL HISTORY

21          At the time of the administrative hearing, plaintiff was a 49 year old man with a 9th

22   grade education.  He received his GED later in life.  Administrative Record ("AR") at 59.  His

23   past work experience includes employment as an able bodied seaman, a gardener, cleaner,

24
ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 1

loader, messenger, mover, and security guard.  AR at 59-61, 231, 237-244, 262.  Plaintiff was last gainfully employed in 2002.  AR at 61-62, 230.

On August 10, 2011, plaintiff filed a claim for SSI payments, alleging an onset date of January 1, 1968.  AR at 38.  The alleged onset date was subsequently amended to August 10, 2011.  AR at 38, 57.  Plaintiff asserts that he is disabled due to ADD, ADHD, anxiety disorder, and major depressive disorder.  AR at 57, 233, 245, 256, 261, 269.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 38. Plaintiff requested a hearing which took place on November 7, 2012.  AR at 38.  On January 7, 2013, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 35-53.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council (AR 1-5), making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On September 2, 2014, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

II.       STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  Andrews v. Shalala,

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  Id.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

Id. at 1076-77; see also Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### III.    EVALUATING DISABILITY

As the claimant, Mr. Schultz bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 3

experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A).  See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner.  Id.  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  Id.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit.  20 C.F.R. § 404.1572.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 4

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); Tackett, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## IV.    DECISION BELOW

On January 7, 2013, the ALJ issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since August 10, 2011, the amended alleged onset date (20 CFR § 416.971 *et seq.*).

2.    The claimant has the following severe impairments: attention deficit disorder (ADD) or attention deficit hyperactivity disorder (ADHD), anxiety disorder NOS, and depressive disorder NOS (20 CFR § 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925 and 416.926).

4.    The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is able to understand, remember, and carry out unskilled work that is routine and repetitive. Contact with the general public would not be an essential element of any task, although incidental contact would not be precluded. He is unable to perform tandem tasks or tasks involving a cooperative team effort, and he must work in a stable workplace environment.

5.    The claimant is unable to perform any past relevant work (20 CFR § 416.965).

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 5

6.    The claimant was born on January 14, 1963 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR § 416.963).

7.    The claimant has at least a high school education and is able to communicate in English (20 CFR § 416.964).

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 416.969 and 416.969(a)).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since August 10, 2011, the date the application was filed (20 CFR § 416.920(g)).

AR at 35-53.

## V.    ISSUES ON APPEAL

The issues on appeal are:

A.    Whether the ALJ erred when she rejected the opinions of examining and consulting doctors?

B.    Whether the ALJ reasonably evaluated the lay witness opinion evidence?

C.    Whether the ALJ's step five finding is supported by substantial evidence?

Dkt. No. 13 at 3 and Dkt. No. 14 at 1-2.

## VI.    DISCUSSION

A.    Medical Opinion Evidence

1.    Examining Doctors

The ALJ concluded that plaintiff is able to perform a full range of unskilled work as

long as it involves routine and repetitive tasks, limited interaction with the general public, no

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 6

cooperative team or tandem tasks, and a stable work environment.  AR 45.  Plaintiff argues that the ALJ improperly rejected the opinions of three examining physicians, Dr. Melanie Mitchell, Dr. James Czysz, and Dr. Rindee Ashcraft, in reaching this determination.[2]  All three doctors concluded, among other things, that plaintiff was not employable because his mental disorders made it difficult for him to adapt to the routine changes found in a typical work environment.

"Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician."  Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.  This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . ."  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation marks and citations omitted).  The ALJ must do more than simply state her conclusions regarding the weight to be given an examining physician's opinion.  In order to establish that her "specific and legitimate reasons" are "supported by substantial evidence," the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

---

[2] In his opening brief, plaintiff did not challenge the ALJ's finding that plaintiff overstated the severity of his symptoms and their effects on his RFC.  He may not raise a new issue in reply.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 7

1

<u>Dr. Mitchell</u>

2      Dr. Mitchell opined in March 2012 that plaintiff "would likely not be employable at

3 this time" because he is easily overwhelmed by and extremely anxious under pressure and

4 because the symptoms of his mental disorders would interfere with his ability to keep a

5 schedule, to maintain a productive pace, to interact, relate, and communicate effectively with

6 others, and/or to adapt to routine workplace changes.  AR 404-405.  The ALJ gave this opinion

7 little weight for the following reasons:

8         a.      Dr. Mitchell evaluated plaintiff for the purposes of determining
                  whether plaintiff was eligible for state benefits;

9
          b.      Dr. Mitchell "apparently relied somewhat heavily" on her
10                diagnosis of PTSD, which the ALJ did not deem a severe
                  impediment;

11
          c.      plaintiff reported hallucinations (with the unstated implications
12                being that the report was untrue and that Dr. Mitchell relied upon
                  it);

13
          d.      the opinion is inconsistent with plaintiff's activities, which
14                showed him capable of interacting with others and doing a range
                  of different tasks;

15
          e.      Dr. Mitchell did not review plaintiff's medical records; and

16
          f.      Dr. Mitchell indicated that plaintiff had "made a poor effort."

17 AR 45-46.

18      The Commissioner acknowledges that it was error to discredit Dr. Mitchell's opinion

19 simply because the report was developed in the context of a request for state benefits.  Dkt.

20 # 14 at 12.  <u>See</u> <u>Reddick</u>, 157 F.3d at 726 ("[I]n the absence of other evidence to undermine the

21 credibility of a medical report, the purpose for which the report was obtained does not provide

22 a legitimate basis for rejecting it.").  In addition, the ALJ's rejection of Dr. Mitchell's opinions

23 because she "relied somewhat heavily" on a PTSD diagnosis and because the specified

24

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 8

limitations are inconsistent with plaintiff's activities are unsupported and constitute error.  Any and all limitations that Dr. Mitchell associated with plaintiff's PTSD were also associated with plaintiff's other, unchallenged, diagnoses.  AR 405.  Nor does the ALJ explain how plaintiff's ability to engage in one-off, failed, and/or limited endeavors is inconsistent with the workplace limitations identified by Dr. Mitchell.  Plaintiff is obviously trying to live a normal life despite his mental disorders, but often fails in the attempts (selling newspapers, watching fireworks in a public park, following through on planned activities, staying with family, *etc.*).  When he is successful, such as when he travelled to New York for his father's funeral or volunteered at a soup kitchen on Thanksgiving, the activity has been scripted to take his limitations into account.  The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016.  "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, . . . and is not held to a minimum standard of performance, as she would be by an employer."  Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).  Simply listing activities in which plaintiff has engaged in the past few years, without regard to the circumstances in which they were performed or the level of success achieved, does not establish facts or clinical evidence that conflicts with Dr. Mitchell's opinions regarding plaintiff's limitations or their effect on his ability to maintain full-time employment.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 9

1    Finally, the ALJ's bald statement that Dr. Mitchell "did not review any medical

2    records, which may have provided her with pivotal information beyond [plaintiff's] subjective

3    allegations" is too vague to support rejection of the examining physician's opinion.  The

4    general reference to medical records and the possibility that they may contradict Dr. Mitchell's

5    conclusions is not the type of "detailed and thorough summary of the facts and conflicting

6    clinical evidence" that the Ninth Circuit requires.  Reddick, 157 F.3d at 725.  Having failed to

7    specifically identify a conflict in the medical evidence, it is not clear what the ALJ found to be

8    persuasive or why it was given more weight than Dr. Mitchell's detailed, thoughtful, and

9    supported conclusions regarding plaintiff's RFC.  The mere existence of a longitudinal medical

10   history is not a "specific and legitimate reason" for rejecting Dr. Mitchell's opinion.

11   The question then becomes whether the identified errors require reversal and remand

12   for further administrative proceedings.  The Ninth Circuit recognizes that harmless error can

13   occur in the Social Security context.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

14   Where the ALJ provides a number of justifications for her decision, only some of which

15   constitute error, the Court must determine whether the remaining legitimate justifications

16   provide substantial evidence supporting the ALJ's decision.  See Batson v. Comm'r of Soc.

17   Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).  The key issue is "whether the ALJ's

18   underlying decision remains supported, in spite of any error, and not whether the ALJ would

19   necessarily reach the same result on remand." Carmickle v. Comm'r of Soc. Sec. Admin., 533

20   F.3d 1155, 1163 n. 4 (9th Cir. 2008).

21   The Court finds that the ALJ's determination that Dr. Mitchell's opinion was entitled to

22   little weight is not supported by substantial evidence in the record when the erroneous

23   justifications are stripped away.  The ALJ's finding that plaintiff was not credible properly

24

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 10

1   colored her concern that Dr. Mitchell may have been too uncritical in accepting plaintiff's

2   report of hallucinations and in excusing plaintiff's "poor effort" in testing.  Nevertheless, those

3   two remaining concerns, while specific and legitimate, are not substantial when compared with

4   the evidence that supports Dr. Mitchell's opinions, including her own testing, clinical

5   evaluation, and finding that there was no evidence of feigning or malingering.  The ALJ's

6   errors were not harmless and require remand.

7                              Dr. Czysz

8        In March 2011, Dr. Czysz evaluated plaintiff's functional limitations, noting that he

9   had marked difficulty performing routine tasks without undue supervision, being aware of and

10   taking precautions against normal hazards, communicating and performing effectively in a

11   work setting that involved public contact, and maintaining appropriate behavior in a work

12   setting.  AR 296.  Dr. Czysz also indicated that plaintiff suffered from moderate limitations in

13   performing new tasks or tasks with complex instructions of three or more steps, and that he

14   would have moderate difficulty communicating and performing effectively in a work setting

15   that involved limited public contact.  AR 296.  Plaintiff's ability to perform simple tasks is

16   mildly impaired, indicating no significant interference. AR 296.  The ALJ gave this opinion

17   limited weight for the following reasons:

18           a.      Dr. Czysz evaluated plaintiff for the purposes of determining
                      whether plaintiff was eligible for state benefits;

19
             b.      Dr. Czysz did not review any medical records other than his own
20                   prior report, he attached no testing to support his report, and his
                     conclusions are inconsistent with treatment notes showing
21                   significant improvement with medication;

22           c.      Dr. Czysz' evaluation relates to a period five months before the
                     application date, "making the evaluation less relevant;" and

23

24   ORDER REVERSING AND REMANDING
     FOR FURTHER ADMINISTRATIVE
     PROCEEDINGS  - 11

d.     the opinion relies heavily on plaintiff's subjective complaints (which the ALJ found less than credible).

AR 46.  As was the case with Dr. Mitchell, the Commissioner acknowledges that it was error to discredit Dr. Czysz' opinion simply because the report was developed in the context of a request for state benefits.  Dkt. # 14 at 8.  In addition, it is conceded that the ALJ erred when she discounted Dr. Czysz' opinion on the ground that the evaluation occurred before the application for benefits was filed.  Id.

The ALJ ultimately rejected Dr. Czysz' opinions because of her overriding concern that the doctor unthinkingly adopted plaintiff's self-report regarding his symptoms and their impact on his ability to find employment.  Dr. Czysz, as an examining physician, undoubtedly took a history from plaintiff, but that alone is not enough to justify rejection of his opinion.  If the law were otherwise, an ALJ's determination regarding a claimant's credibility would automatically exclude opinions of treating and examining physicians in favor of the opinions of consulting physicians who were "untainted" by conversation with the claimant.  That is not the way the ALJ must weigh medical opinions under the governing regulations and case law, however.  See 20 C.F.R. § 404.1527; Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In order to justify the rejection of Dr. Czysz' opinions, the ALJ must point not only to the fact that plaintiff's history was less than credible, but also to some evidence in the record from which she could legitimately conclude that Dr. Czysz blindly adopted plaintiff's incredible statements regarding his symptoms or limitations and/or was unduly influenced thereby.  With regards to Dr. Czysz, she has done so.

The ALJ points out that Dr. Czysz' report is "brief, conclusory, and inadequately supported by clinical findings."  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  His opinions regarding plaintiff's functional limitations are presented in a checkbox format, with

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 12

no description of the findings that led to those conclusions.  The only test results summarized

in the record show unspecified "difficulty" with attention, calculation, and recall (AR 298), but

there is nothing to close the gap between these results and the marked impairments indicated in

the checkboxes.  As the ALJ noted, the Mental Status addendum that might explain Dr. Czysz'

reasons for concluding that plaintiff was markedly limited in key work-related attributes is

missing.  AR 46 and 296.  There is also conflicting medical evidence in the record that further

supports the ALJ's determination that Dr. Czysz was unduly influenced by plaintiff's self-

reported symptoms:  notes from plaintiff's treating physicians – which Dr. Czysz did not

review -- show that plaintiff was responding well to medications and presented without any

unusual signs of anxiety or depression.  See, e.g., AR 316-18, 328-30.  Having reviewed the

record as a whole, the Court finds that there is substantial evidence justifying the ALJ's

rejection of Dr. Czysz' conclusory opinion in favor of other evidence in the record.

### Dr. Ashcraft

Dr. Ashcraft concluded in October 2011 that plaintiff's "ability to adapt to routine

changes in a typical work setting is likely to be impacted by reported anxiety, poor impulse

control, and difficulty getting along with others."  AR 357.  The ALJ gave this opinion limited

weight because Dr. Ashcraft did not perform her own assessment, instead summarizing

plaintiff's self-reported limitations even though they were inconsistent with her own

observations.  AR 46.  Dr. Ashcraft also assigned plaintiff a Global Assessment of Functioning

("GAF") score of 36-40, indicating some impairment in reality testing or communications or a

major impairment in several areas such as work, school, family relations, judgment, thinking,

or mood.  AR 356; Dkt. # 13 at 9 n.4.  The ALJ rejected this assessment for the following

reasons:

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 13

1

     a.  plaintiff's statements regarding his symptoms and the functional
        limitations they imposed were not credible;

2

3

     b.  Dr. Ashcraft considered unrelated external factors such as
        plaintiff's financial obligations; and

4

     c.  the GAF score was inconsistent with the underlying mental
        status examination findings.

5

AR 46.

6

    Dr. Ashcraft's assessment of plaintiff's functional capabilities is based on a review of

7

three medical records, a history provided by plaintiff, and her observations during the

8

examination.  There is no indication of any testing other than the Mental Status Examination,

9

which revealed that the patient was "content," appeared euthymic, and interacted appropriately

10

with the examiner.  AR 355, 357.  Nevertheless, Dr. Ashcraft concluded that plaintiff's "ability

11

to adapt to routine changes in a typical work setting" would be limited based on his reports of

12

"anxiety, poor impulse control, and difficulty getting along with others."  AR 357.  The ALJ

13

properly rejected this conclusion on the grounds that it was based on a blind adoption of

14

plaintiff's statements regarding his symptoms (which the ALJ found incredible) and was

15

wholly unsupported by the examiner's own observations and testing.

16

    2.  <u>Consulting Doctors</u>

17

    Dr. Patricia Kraft and Dr. John Robinson examined plaintiff's medical records and

18

concluded that he was moderately limited in his ability to understand and remember detailed

19

instructions and therefore had the RFC to perform simple tasks.  AR 109, 120-21.  Although

20

the ALJ gave the opinions of these consulting doctors the greatest weight, she did not accept

21

the "simple task" limitation on the grounds that (a) plaintiff's "wide range of activities, such as

22

seeking out and obtaining employment selling newspapers" showed that he could handle some

23

complexity as long as the work was "unskilled," with limited public contact and no cooperative

24

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 14

1   team tasks, and in a stable work environment and (b) plaintiff had improved with treatment.

2   AR 45.  While plaintiff notes the distinction between the words "simple" and "unskilled," the

3   Commissioner points out that, to the extent there is a real difference in meaning, the use of the

4   term "unskilled" is justified by substantial evidence in the record and that any distinction is

5   irrelevant as far as the step five analysis goes because the vocational expert testified that the

6   available jobs in the economy are, in fact, "simple, routine, and repetitive." Dkt. # 14 at 13.

7   Plaintiff does not address this issue in reply.  The Court finds that the ALJ's decision is

8   supported by substantial evidence in the record or, in the alternative, is harmless error.[3]

9   B.      Lay Witness Testimony

10          "Lay testimony as to a claimant's symptoms or how an impairment affects the

11  claimant's ability to work is competent evidence that the ALJ must take into account."  Molina

12  v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  Failure to do so is reversible error unless the

13  ALJ "expressly determines to disregard such testimony and gives reasons germane to each

14  witness for doing so."  Tobeler v. Colvin, 749 F.3d 830, 832-33 (9th Cir. 2014) (quoting Lewis

15  v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).  Plaintiff argues that the ALJ erred when she gave

16  little weight to the testimony of Virginia Witter, James Heaton, and P. Abad.

17          1.      Virginia Witter

18          Ms. Witter was plaintiff's case manager at the Community Psychiatric Clinic.  She

19  testified at the hearing that she generally saw plaintiff twice a month for 30-60 minutes at a

20  time and that she had been providing individual outpatient therapy and case management

21  _____

22          [3] Plaintiff also states that "the ALJ rejected without explanation Dr. Kraft and Dr.
    Robinson's opinions that Mr. Schultz was moderately limited in his ability to accept instruction
    and respond appropriately to criticism from supervisors." Dkt. # 13 at 17.  The ALJ expressly
23  accepted the consulting doctors' assessment of plaintiff's social limitations, however, and
    incorporated appropriate limitations in his RFC.

24  ORDER REVERSING AND REMANDING
    FOR FURTHER ADMINISTRATIVE
    PROCEEDINGS  - 15

services to plaintiff for nine months.  AR 81.  Ms. Witter stated that plaintiff had "very

significant problems . . . understanding, recognizing, and processing all of his emotions," that

these problems "significantly" affect "his ability to function socially, occupationally," and that

they manifested themselves as agitation, irritability, perseveration, and an inability to read

social cues.  AR 83-86.  Ms. Witter also noted that plaintiff would lose focus and need to be

redirected.  AR 87.  When asked how plaintiff would do in a work environment, Ms. Witter

testified:

> I think he'd have a lot of problems in a work setting due to the fact he can't
> form relationships and part of working is forming relationships with peer – with
> your fellow employees and also your supervisors, along with – he also gets very
> overwhelmed very quickly, and I think that's a significant part of his mental
> health issue, is that he can't handle stress or he can't handle confrontation or he
> can't handle kind of just understanding what the situation requires, [or] what it
> requires of him.

AR 85.  The ALJ gave Ms. Witter's opinions little weight for the following reasons:

    a.    Ms. Witter is plaintiff's advocate;

    b.    Ms. Witter's interactions with plaintiff were too limited for her
          to accurately describe his fear of rejection and/or inability to
          form close relationships;

    c.    plaintiff's "numerous activities" do not support Ms. Witter's
          conclusions; and

    d.    the medical records show that plaintiff interacts well with
          providers.

AR 46.

         The ALJ erred in rejecting Ms. Witter's testimony simply because she is plaintiff's case

manager.  Such a rejection constitutes the wholesale dismissal of certain witnesses as a group:

the reason is not germane to the individual who testified, but rather improperly applies to the

entire group of which she is a member. Perkins v. Colvin, __ F. Supp.3d. __, 2014 WL

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 16

4425785, at *11 (D. Ariz. Sept. 9, 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)).  The ALJ did not identify any indications of unusual partiality or other evidence suggesting that Ms. Witter would exaggerate or lie to assist plaintiff in obtaining benefits.  In fact, the treatment records and medical opinions amply support Ms. Witter's assessment of plaintiff's difficulty in forming relationships, agitation, defensiveness, stress intolerance, and anxiety, invalidating any presumption of bias that could possibly arise from her position as case manager.

The ALJ's rejection of Ms. Witter's testimony because she lacked familiarity with plaintiff is not supported by substantial evidence in the record and is therefore insufficient.  See Scott v. Colvin, 2015 WL 1188540, at *11-12 (W.D. Wash. Mar. 11, 2015).  As far as the record shows, Ms. Witter was one of the few people with whom plaintiff had any sort of long-term relationship.  She had ample opportunity to talk to plaintiff regarding his situation and issues, to observe his behaviors and how he dealt with problems, to review his past interactions with counselors, and to evaluate his ability to develop and maintain relationships as she assisted him with his housing and medical needs.  The conclusory assertion that Ms. Witter's interactions with plaintiff were too limited to allow her to accurately describe his fear of rejection is unsupported.

With regards to the ALJ's reliance on plaintiff's "numerous activities," this justification fails for the reasons set forth in Section IV.A.1.

Three out of four of the ALJ's reasons for disregarding the testimony of plaintiff's case manager are not supported by substantial evidence in the record and are therefore not germane.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 17

1   The remaining justification – that plaintiff interacts well with his medical providers[4] – is not

2   substantial evidence supporting the rejection of Ms. Witter's testimony given the nature of

3   plaintiff's mental disorders and the significant difference in time, demands, and expectations

4   between attending a medical appointment and full-time employment.  For these reasons, the

5   ALJ's assessment of Ms. Witter's testimony is reversed and remanded for further

6   administrative proceedings.

7           2.      James Heaton

8           Mr. Heaton is a friend of plaintiff's, an older gentleman who acts like a father figure.

9   He submitted a Function Report dated February 2012 stating that plaintiff's conditions affect

10  his memory, concentration, understanding, and ability to follow instructions, complete tasks,

11  and get along with others.  AR 266.  The ALJ incorporated some of the stated limitations into

12  the RFC, but generally afforded Mr. Heaton's statements little weight because:

13                  e.      the statements are "strikingly similar to the claimant's
                            statements, both in content and level of description in the
14                          claimant's functional reports; "

15                  f.      Mr. Heaton's statements are very general and do not describe
                            any particular limitations;
16
                    g.      Mr. Heaton relied heavily on plaintiff's subjective complaints;
17                          and

18                  h.      the identified limitations are inconsistent with plaintiff's
                            activities.
19
    AR 46-47.  Although the vague reference to inconsistent activities is insufficient in this case,
20
    the remaining reasons justify the ALJ's treatment of Mr. Heaton's statement.
21

22

23          [4]  Plaintiff did not challenge this reason in his opening brief and may not do so for the
    first time in reply.
24
    ORDER REVERSING AND REMANDING
    FOR FURTHER ADMINISTRATIVE
    PROCEEDINGS  - 18

3.    P. Abad

P. Abad interviewed plaintiff when he applied for benefits in August 2011.  The interviewer noted that plaintiff had difficulty in understanding and concentration, and that plaintiff "had poor memory especially with dates of employment and medical records.  He didn't give much eye contact.  Kept looking down when I wasn't asking him any questions." AR 227.  Plaintiff argues that the ALJ violated Social Security Ruling 96-7p when she failed to specifically address and analyze the interviewer's notes.  1996 WL 374186 ("The adjudicator must also consider any observations about the individual recorded by Social Security Administration (SSA) employees during interviews, whether in person or by telephone.").  The Ruling simply requires consideration of employee observations, not explicit analysis.  The ALJ stated that she considered evidence related to symptoms under SSR 96-7p. AR 42.  The content of the interviewers notes is of such a general, non-specific, duplicative nature that it is not surprising that the ALJ deemed it unworthy of separate discussion.  No error has been shown.

C.    Step Five Analysis

Because this matter will be remanded for a re-evaluation of certain testimony and a reassessment of plaintiff's RFC, the Court need not determine whether the ALJ's hypothetical questions to the vocational expert at the first hearing accurately reflected plaintiff's limitations.

V.   CONCLUSION

For the foregoing reasons, the ALJ erred in her step four and step five analyses and the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings not inconsistent with this Order.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 19

1        Dated this 4th day of May, 2015.

2

3

4                  Robert S. Lasnik
                  United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 20